## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

CMAC, INC.,

Plaintiff,

vs.

CITY OF OMAHA,

Defendant.

8:11CV337

ORDER

This is an action for the recovery of the plaintiff's interest in a vehicle, which, as a result of the vehicle's use in a vehicular homicide, was seized, impounded, deemed abandoned, and eventually sold at auction. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The parties consented to proceed before the undersigned magistrate judge under 28 U.S.C. § 636(c).[1] The parties submitted stipulated facts (Filing No. 52), indices of evidence (Filing Nos. 53-55 and 57), and written argument. The plaintiff filed a brief (Filing No. 56) in support of its argument. The defendant filed a brief (Filing No. 62) in response. The plaintiff filed a brief (Filing No. 63) in reply, whereupon the case was deemed submitted for decision.

## BACKGROUND

On May 21, 2007, the plaintiff sold a vehicle to Roman Rodriguez-Rojas (Rodriguez) and Maria S. Alanis (Alanis) on credit and retained a duly perfected purchase money security interest. **See** Filing No. 52 - Stipulated Facts. On September 22, 2007, an Omaha Police Department (OPD) officer witnessed Rodriguez use the vehicle to intentionally pursue, run down, and kill an individual. **Id.** OPD officers impounded the vehicle as evidence. **Id.** After the defendant sent notice to the plaintiff the vehicle was no longer needed for law enforcement purposes, the vehicle remained unclaimed and was eventually sold at public auction free and clear of the plaintiff's interest. **Id.** The plaintiff now seeks to recover that interest.

---

[1] On February 28, 2014, upon consent of the parties, United States District Joseph F. Bataillon transferred this matter to the undersigned magistrate judge for all further proceedings and the entry of judgment. **See** Filing No. 42 - Consent; Filing No. 43 - Order of Reference.

On August 28, 2011, the plaintiff filed a complaint against the defendant in the District Court of Douglas County, Nebraska.  **See** Filing No. 1 - Notice of Removal.  On September 28, 2011, the defendant removed the action to this court.  **Id.**  On January 20, 2012, the plaintiff filed an Amended Complaint alleging four counts.  **See** Filing No. 20 - Amended Complaint.  In the first two counts, the plaintiff alleges a replevin and conversion action, respectively.  **Id.**  In count three, the plaintiff alleges the defendant deprived the plaintiff of its constitutional rights.  **Id.**  Lastly, in count four, the plaintiff seeks declaratory judgment that the impound statutes, Neb. Rev. Stat. §§ 60-1901, 60-1903, and 60-1903.01, are unconstitutional.  **Id.**  The defendant generally denies the plaintiff's allegations and asserts several affirmative defenses.  **See** Filing No. 22 - Answer.

## FINDINGS OF FACTS

The parties stipulated (Filing No. 52) to the following facts:

1.  The court has jurisdiction over both the parties and the subject matter.  Venue is proper pursuant to 28 U.S.C. § 1391.

2.  The plaintiff is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

3.  The defendant is a city of the metropolitan class, a Nebraska municipal corporation, and a political subdivision of the State of Nebraska.

4.  All relevant events, acts, and transactions occurred in Nebraska.

5.  In May of 2007, the plaintiff entered into a promissory note with Rodriguez and Alanis for the purchase of a 1998 Lincoln Navigator, VIN #SLMPU28L4WLJ39237 (the vehicle).  As security for the note, the plaintiff perfected a purchase money security interest in the vehicle.  The vehicle was titled in the names of Rodriguez and Alanis, as owners, and listed the plaintiff as a first lienholder.  The promissory note was in the amount of $9,975.27.

6.  On or about September 24, 2007, Rodriguez used the vehicle to intentionally pursue, run down, and kill Ryan Selway.  Rodriguez committed these acts in

2

plain view of an on-duty OPD officer.  Rodriguez was arrested immediately and incarcerated.  **See** Ex. 104.

7.      The State of Nebraska, represented by the OPD, seized the vehicle from Rodriguez as evidence of felony motor vehicle homicide.  On or about September 25, 2007, the State of Nebraska, represented by the Douglas County Attorney's Office, filed a criminal complaint against Rodriguez in the County Court of Douglas County, Nebraska, bearing case number CR07-28149.  On or about November 1, 2007, Rodriguez was bound over to the District Court of Douglas County, Nebraska, and charged with manslaughter, use of a deadly weapon to commit a felony, and motor vehicle homicide.  The criminal case was assigned to Douglas County District Court Judge Ashford. **See** Ex. 104.

8.      On or about September 24, 2007, at the direction of the State of Nebraska, represented by the Douglas County Attorney, the vehicle was held as evidence and kept in the defendant's Impound Lot.  The defendant thereafter held the vehicle as bailee.  In accordance with Neb. Rev. Stat. § 29-818, the defendant's Impound Lot personnel held the vehicle as evidence awaiting the District Court of Douglas County or the Douglas County Attorney's direction the vehicle was no longer needed for evidentiary purposes.

9.      By October of 2007, Rodriguez and Alanis were in default of the promissory note and owed a balance of $9,606.49, plus an amount of interest at 17.99% per annum.

10.     On or about April 16, 2009, the Douglas County Attorney's Office, on behalf of the State of Nebraska, authorized release of the vehicle.  **See** Ex. 102.

11.     By Certified Mail dated April 17, 2009, the defendant's Impound Lot personnel notified Rodriguez, Alanis, and the plaintiff that the vehicle was no longer needed for law enforcement purposes and could be claimed.  **See** Ex. 103. The notice informed Rodriguez, Alanis, and the plaintiff that towing and storage fees must be paid, and that the defendant would dispose of the vehicle if it remained unclaimed after thirty (30) days from the date of the

notice.  The notice recited it was being given pursuant to Neb. Rev. Stat. § 60-1901, *et seq.* **Id.**

12.  On April 20, 2009, Rodriguez plead *nolo contendere* to murder by use of the vehicle.

13.  On July 27, 2009, Rodriguez was sentenced to a term of years in the Nebraska State Penitentiary.

14.  The plaintiff did not obtain a repossession title for the vehicle.  A repossession title was available to the plaintiff, as lienholder, based upon Rodriguez and Alanis' default, upon application to the Nebraska Department of Motor Vehicles.  **See** Ex. 106.  At no time subsequent to May of 2007, did the plaintiff acquire title to the vehicle.

15.  The National Automobile Dealers Association (NADA) values for the vehicle (V8, four-wheel drive, approximate mileage: 101,000, and options) were:
     a.  October 2007
           i.  Clean retail:        $10,800.00
          ii.  Clean trade-in:      $8,700.00
         iii.  Clean loan:          $7,900.00
     b.  January through April 2009
           i.  Clean retail:        $6,975.00
          ii.  Clean trade-In:      $5,200.00
         iii.  Clean loan:          $4,700.00
     c.  May through August 2009
           i.  Clean retail:        $6,675.00
          ii.  Clean trade-In:      $4,925.00
         iii.  Clean loan:          $4,450.00

16.  The plaintiff refused to pay the assessed fees.  Impound Lot policy allowed the vehicle to be claimed by payment of the fees under protest, after which it would be determined whether the fees should be refunded.  **See** Ex. 107.

17.  On or about August 21, 2009, the defendant obtained title to the vehicle as an "abandoned vehicle" as defined in Neb. Rev. Stat. §§ 60-1901(1)(d) and 60-1903.  **See** Ex. 105.

4

18.    The plaintiff filed a replevin action in the County Court of Douglas County, Nebraska, against the defendant and Douglas County, Nebraska.   An evidentiary hearing was held on or about May 26, 2009.  **See** Ex. 109.

19.    On June 8, 2009, County Court Judge Barrett ruled the plaintiff was not entitled to possession of the vehicle and denied the plaintiff's replevin demand.  Judge Barrett ruled the vehicle had been abandoned as a matter of law.  **See** Ex. 109.

20.    On July 16, 2009, after an evidentiary hearing, County Court Judge Darryl Lowe granted the defendant and Douglas County's motions to dismiss. Judge Lowe ruled subject matter jurisdiction over the vehicle was exclusively vested in the District Court which heard the murder case, and dismissed the replevin case without prejudice.

21.    The plaintiff appealed the County Court's decision.  On February 3, 2010, District Judge Gerald Moran affirmed the County Court's decision holding the replevin action was statutorily obligated to be brought in the District Court before the judge assigned to the criminal prosecution.  **See** Ex. 108.  The District Court held because the County Court did not have jurisdiction, the District Court also did not have subject matter jurisdiction.  *Id.*  The District Court ruled the County Court order was not a valid final order.  *Id.*

22.    On April 28, 2010, the Nebraska Court of Appeals affirmed the District Court's decision.

23.    The vehicle was subsequently sold at public auction on or about August 14, 2010, for the highest bid of $3,400.00 to Jaimes Juan Velasquez.

24.    The plaintiff sold two (2) other similar Lincoln Navigators between January and December of 2007 for $12,995.00 and $11,745.00 respectively.

25.    The plaintiff subsequently filed this action in the Douglas County District Court, stating it was a companion case and it should be assigned to Judge Ashford under the Douglas County District Court rules.   The defendant removed the case to the United States District Court for the District of Nebraska.

26.     On or about December 23, 2013, the plaintiff filed an action in the Douglas County Court bearing case number CI13-25859 against Rodriguez and Alanis for the balance due on the promissory note.  Default judgment was entered against Rodriguez on February 10, 2014, in the amount of $9,606.49 plus interest and costs, and a default judgment was entered against Alanis on March 19, 2014, in the amount of $9,606.49 plus interest and costs.  No funds have been obtained to be applied to said judgments.

27.     Between May of 2007, and April of 2009, the plaintiff was not allowed access to the vehicle to assess its condition or appraise the value.

28.     Craig Callendine (Mr. Callendine), Vice-President and Collection Manager for the plaintiff, has been employed in the new and used car business for over twenty-five years and has been appraising vehicles all of that time.   Mr. Callendine opined the 2007 sales value of the vehicle was $12,370.00, which is the average of two other similar vehicles sold.

## CONCLUSIONS OF LAW

### A.     Preliminary Matters

The defendant briefly argues the plaintiff's Amended Complaint should be dismissed because the plaintiff failed to join necessary parties such as the State of Nebraska, Douglas County, and Douglas County's Attorney's Office.  **See** Filing No. 62 - Response p. 2-3.  The court will construe the defendant's argument as a motion for failure to join under Fed. R. Civ. P. 12(b)(7).  Under Fed. R. Civ. P. 12(b)(7), the movant bears the burden of showing the missing party or parties should have been joined under Fed. R. Civ. P. 19.   The defendant has not shown why these parties, who were responsible for the seizure and use of the vehicle as evidence, should have been joined.   The plaintiff's Amended Complaint does not allege the defendant is liable because of the vehicle's seizure or use as evidence, but generally alleges liability based on the defendant's refusal to release the vehicle without payment of fees.   Therefore, joinder of additional parties is unnecessary and the defendant's Fed. R. Civ. P. 12(b)(7) motion is denied.   The defendant also argues the defendant was merely a bailee;

6

however, the defendant fails to explain how status as a bailee requires dismissal of the Amended Complaint.

## B.    Replevin and Conversion (Counts I and II)

The plaintiff argues the defendant had no right to withhold the vehicle and demand the plaintiff pay impound fees for three reasons.  First, although Neb. Rev. Stat. § 60-1903.01 "clearly applies,"[2] the statute does not apply to the plaintiff because fees can only be assessed against the registered owner or the person in possession of the vehicle when the vehicle is taken into custody.  **See** Filing No. 56 - Brief p. 1-5.  The plaintiff asserts it is undisputed it was not the owner or in possession of the vehicle.  *Id.* Second, the plaintiff contends the defendant did not comply with Neb. Rev. Stat. § 60-2410(2) by providing notice to the plaintiff within fifteen days after the vehicle was towed.  *Id.*  Pursuant to § 60-2410(3), the plaintiff contends the defendant's failure to provide notice renders the defendant's claim subordinate to the plaintiff's claim and nullifies the defendant's disposition of the vehicle.  *Id.*  Lastly, the plaintiff argues it did not abandon the vehicle because from the day the plaintiff received the bill for impound fees it sought repossession of the vehicle.  *Id.*  The plaintiff argues this court should void the defendant's wrongful taking and disposition of the vehicle and award the plaintiff the value of the vehicle at the time the defendant took title of the vehicle on August 18, 2009, plus costs and attorney's fees.  *Id.*  The plaintiff also asserts a conversion claim and contends the defendant wrongfully retained $3,400, which the defendant received when the defendant sold the vehicle at auction.  *Id.*

In response, the defendant contends the plaintiff makes a circular argument: while claiming the right to replevin, which requires a showing of ownership, the plaintiff simultaneously denies ownership to avoid paying impound fees.  **See** Filing No. 62 - Response p. 4.  The defendant argues the plaintiff cannot adopt inconsistent arguments and avoid payment of the fees.  *Id.*  The defendant contends it properly demanded payment of fees before it released the vehicle because Neb. Rev. Stat. § 60-1903(2) clearly provides:  "Any person claiming such vehicle shall be required to pay the cost of

---

[2]  In the plaintiff's brief, the plaintiff admits Neb. Rev. Stat. § 60-1903.01 "clearly applies" to this case.  **See** Filing No. 56 - Brief p. 2.

removal and storage of such vehicle." *Id.* at 5 (**citing** Neb. Rev. Stat. § 60-1903(2)). The defendant argues the plaintiff has not identified any authority contrary to the impound statutes. *Id.* Lastly, the defendant asserts the plaintiff's reliance on Neb. Rev. Stat. § 60-2410 is misplaced as the statute is part of a group of "parking lot statutes" and does not apply in this instance. *Id.* at 6 (**citing *Packett v. Lincolnland Towing, Inc.***, 419 N.W.2d 149, 152 (Neb. 1988) (referring to § 60-2410 as part of the "parking lot statutes")).

In reply, the plaintiff reiterates its arguments and asserts the defendant "has not provided a scintilla of evidence that it had a right to demand fees from [the plaintiff], and no evidence that it notified [the plaintiff] that the vehicle would be sold and [the plaintiff]'s security interest obliterated." **See** Filing No. 63 - Reply p. 1-3.

In a replevin action, "[i]t is the burden of the plaintiff . . . to prove by a preponderance of the evidence that (1) he was the owner of the property, (2) he was entitled to immediate possession, and (3) the defendant wrongfully detained the property." ***Nelson v. Cool***, 434 N.W.2d 32, 35 (Neb. 1989). "The cardinal question in every replevin action is whether the plaintiff therein was entitled to the immediate possession of the property[.]" ***Packett***, 419 N.W.2d at 151 (internal citation omitted). The court will analyze these factors *in seriatim*.

### 1.    Owner

The plaintiff must first establish it was the owner of the vehicle. Based on the plaintiff's adamant argument it was not the owner of the vehicle, and the fact that the plaintiff did not avail itself of the opportunity to become the owner,[3] the court finds the plaintiff was not the owner of the vehicle. However, Neb. Rev. Stat. § 25-1093.01, the

---

[3] There is some discussion whether the plaintiff could have obtained a repossession title to the vehicle. The plaintiff argues it could not have obtained a repossession title because it did not have physical possession of the vehicle and the Affidavit of Ownership by Repossession (AOR) requires the plaintiff to have physical possession. **See** Filing No. 56 - Brief p. 7; Filing No. 63-1 - AOR. In contrast, the defendant argues the AOR does not require physical possession. **See** Filing No. 62 - Response p. 4-5. Upon review of the AOR, there is absolutely nothing in the AOR that provides the affiant must attest to physical possession of the vehicle in order to apply for repossession. **See** Ex. 106; Filing No. 63-1 - AOR. The plaintiff could have obtained ownership through a repossession title, but nevertheless refused to obtain title because the plaintiff operated under the incorrect assumption, as explained below, that the plaintiff would not have to pay impound fees if the plaintiff was not the owner. Regardless, this issue is not determinative of the plaintiff's replevin action.

Nebraska Statute pertaining to replevin actions, provides the plaintiff must show "the plaintiff is the owner of the property or has a special ownership *or interest* therein[.]" **See** Neb. Rev. Stat. § 25-1093.01.  The plaintiff did have an interest in the vehicle.  **See** Filing No. 52 - Stipulated Facts ¶ 5.  Therefore, the court will assume the plaintiff establishes the "owner" element of a replevin action.  Even assuming the plaintiff satisfies this element, the plaintiff has failed to carry its burden and show the plaintiff was entitled to immediate possession and the defendant wrongfully detained the property.

### 2.      Immediate Possession and Wrongful Detention

The plaintiff's right to immediate possession and the question of wrongful detention depends on whether the defendant followed proper procedures in refusing to release the vehicle before payment of fees.  Before determining whether the defendant followed proper procedure, the court must identify the statutes setting forth the proper procedure.  The plaintiff cites two groups of statutes:  Neb. Rev. Stat. § 60-1901, *et seq.* and Neb. Rev. Stat. § 60-2410.  Article 24 of Chapter 60 is titled "Parking Lots" and statutes under Article 24 have been referred to as the "parking lot statutes."  **See Packett**, 419 N.W.2d at 152.  Neb. Rev. Stat. § 60-2401, *et seq.* set forth the respective rights and responsibilities of vehicle owners whose cars are towed for improper parking and do not provide rules regarding vehicles impounded for investigatory purposes by law enforcement.  **See** Neb. Rev. Stat. § 60-2401, *et seq.*  The plaintiff has not explained how the "parking lot statutes" apply to this case.  Therefore, the court's analysis will focus on whether the defendant followed the appropriate procedures under Neb. Rev. Stat. § 60-1901, *et seq.*

Under Neb. Rev. Stat. § 60-1903.01,

> A state or local law enforcement agency which has custody of a motor vehicle for investigatory purposes and has no further need to keep it in custody shall send a certified letter to each of the last-registered owners stating that the vehicle is in the custody of the law enforcement agency, that the vehicle is no longer needed for law enforcement purposes, and that after thirty days the agency will dispose of the vehicle.

Neb. Rev. Stat. § 60-1903.01.  "A motor vehicle is an abandoned vehicle:  . . . [i]f left for more than thirty days in the custody of a law enforcement agency after the agency has sent a letter to the last-registered owner under section 60-1903.01[.]"  Neb. Rev. Stat. § 60-1901(1)(e).  "Any person claiming such vehicle shall be required to pay the cost of removal and storage of such vehicle."  Neb. Rev. Stat. § 60-1903(2).

The evidence shows the vehicle was authorized for release on April 16, 2009.  **See** Ex. 102.  The next day, April 17, 2009, the defendant sent a certified letter to the plaintiff.  **See** Ex. 103.  The letter provides:

> The vehicle is in the custody of the City of Omaha at its Vehicle Impound Facility 7809 "F" Street, Omaha, Nebraska. It has been held for investigatory purposes.  However, the vehicle is no longer needed for law enforcement purposes, and can now be claimed.  The vehicle will be disposed of by the city after thirty (30) days from the date of this notice, if it remains unclaimed.
>
> Storage fees for the vehicle must be paid, if the registered owner or person in possession of the vehicle when it was taken into custody was charged with a felony or misdemeanor related to the to the offense for which the city took the vehicle into custody.
>
> Any personal property in the vehicle that remains unclaimed will be disposed of in a similar manner.
>
> This notice is provided pursuant to Nebraska Revised Statutes Sections 60-1901 *et seq*.

*Id.*  The plaintiff received the letter on April 21, 2009.  *Id.*  The plaintiff refused to pay impound fees or pay the fees under protest to reclaim the vehicle.  **See** Filing No. 52 - Stipulated Facts ¶ 16.  Within the thirty-day window, the plaintiff filed a replevin action in County Court of Douglas County; however, the plaintiff's replevin action was eventually dismissed for lack of subject matter jurisdiction.  *Id.* ¶¶ 18-21.[4]  On August 21, 2009, the defendant obtained title to the vehicle.  **See** Ex. 105.  The title listed the vehicle as abandoned.  *Id.*  The vehicle was eventually sold at public auction for $3,400.  **See** Filing No. 52 - Stipulated Facts ¶ 23.

---

[4]  Although the County Court determined the vehicle was abandoned and denied the plaintiff's replevin action, the County Court did not have jurisdiction over the matter because Neb. Rev. Stat. § 29-818 exclusively vested jurisdiction over the disposition of the vehicle with the court that heard the underlying murder case.  **See** Ex. 108 - Feb. 3, 2010 - Order.

The plaintiff has not shown the defendant's refusal to release the vehicle without payment of fees contravened the applicable impound statutes.  Section 60-1903(2) clearly states "*[a]ny* person claiming such vehicle *shall be required to pay* the cost of removal and storage of such vehicle."  The defendant properly demanded the payment of fees under § 60-1903(2) before releasing the vehicle to the plaintiff.  The plaintiff had the option to pay the fees under protest; however, the plaintiff chose a different, albeit unsuccessful, avenue to reclaim the vehicle in an attempt to avoid paying impound fees. Because the plaintiff failed to establish the defendant improperly demanded payment of impound fees before releasing the vehicle, the plaintiff has not shown the defendant wrongfully detained the vehicle or that the plaintiff was entitled to immediate possession of the vehicle.[5]

The plaintiff also asserts a conversion count and relies on its arguments made under the replevin count without any citation to legal authority.  For the same reasons stated above, the court finds the plaintiff has not established the defendant is liable for conversion.  Accordingly, the court finds in favor of the defendant on Counts I and II.

## C.    Deprivation of Rights and Statute Constitutionality (Counts III and IV)

In Counts III and IV, the plaintiff argues Neb. Rev. Stat. §§ 60-1901, 60-1903, and 60-1903.01 are unconstitutional because possessor's of security interests in vehicles are not protected in the "Nebraska statutory scheme involving so-called abandoned vehicles."  **See** Filing No. 56 - Brief p. 5-7.  The plaintiff contends the statutes provide no notice and no opportunity to be heard.  **Id.**  In response, the defendant asserts the plaintiff received notice and was provided an opportunity to be heard.  **See** Filing No. 62 - Response p. 6-7.  The defendant argues the letter the plaintiff received informed the plaintiff it had thirty days to reclaim the vehicle otherwise

---

[5]  Neb. Rev. Stat. § 60-1903(2) also requires a local authority or state agency to send notice to the last-registered owner, lienholder, or mortgagee after a vehicle is abandoned.  In the plaintiff's reply brief, the plaintiff briefly mentions it did not receive notice under this section.  **See** Filing No. 63 - Reply p. 3. However, the plaintiff did not address how a possible failure to provide notice under Neb. Rev. Stat. § 60-1903(2) affects the sale of the vehicle and the plaintiff's instant replevin action.  Further, the plaintiff did not address whether the notice the defendant did send was sufficient under Neb. Rev. Stat. §§ 60-1903(2) and 1903.01 as the notice indicated the vehicle would be disposed of after thirty days in accordance with Neb. Rev. Stat. § 60-1901, *et seq.*  **See** Ex. 103.  Ultimately, the plaintiff has the burden to prove its replevin action and the court finds the plaintiff failed to meet its burden to show the notice was deficient under either Neb. Rev. Stat. §§ 60-1903(2) or 60-1903.01.

the vehicle would be abandoned and disposed of according to the impound statutes. *Id.*
The defendant also argues procedures were in place for the plaintiff to contest the
payment of fees, but the plaintiff declined to participate in the process. *Id.*

Under Nebraska law,

> A statute is presumed to be constitutional, and all
> reasonable doubts are resolved in favor of its
> constitutionality. The burden of establishing the
> unconstitutionality of a statute is on the one attacking its
> validity. The unconstitutionality of a statute must be clearly
> established before it will be declared void. The Nebraska
> Legislature is presumed to have acted within its
> constitutional power despite that, in practice, its laws may
> result in some inequality.

*Big John's Billiards v. Nebraska*, 288 Neb. 938, 943-44 (2014) (citations omitted).

The plaintiff's conclusory constitutionality challenge is insufficient to overcome
the presumption the statutes are constitutional.[6]  The impound statutes provide owners
or lienholders with notice a vehicle may be reclaimed. Specifically, under § 60-1903.01
notice shall be provided to the last-registered owners. **See** Neb. Rev. Stat. § 60-
1903.01. Further, § 60-1903 provides notice "shall also be sent to the *lienholder* or
mortgagee." **See** Neb. Rev. Stat. § 60-1903(2) (emphasis added). Additionally,
according to the parties' stipulation, "Impound Lot policy allowed the vehicle to be
claimed by payment of the fees under protest, after which it would be determined
whether the fees should be refunded." **See** Filing No. 52 - Stipulated Facts ¶ 16; Ex.
107. In this case, the defendant sent notice to the plaintiff through certified mail, the
plaintiff received the notice, and the plaintiff attempted to reclaim the vehicle. The
plaintiff had at least thirty days to be heard, pay the fees under protest, and reclaim the
vehicle. The plaintiff chose not to follow the procedures available to reclaim the vehicle,
which choice does not render the statutes unconstitutional or establish the defendant
unconstitutionally deprived the plaintiff of any rights or property. Accordingly, the court
finds the plaintiff failed to show the defendant deprived the plaintiff of any rights or

---

[6]  As an indication of the conclusory nature of the plaintiff's challenge, the plaintiff's only citation to
authority is a 2011 case from the United States District Court for the District of Columbia. **See DCFS
USA, LLC v. District of Columbia**, 803 F. Supp. 2d 29 (D.D.C. 2011). Despite the plaintiff's contention,
**DCFS** is not similar to this case because, in the instant case, the defendant sent notice to the plaintiff
through certified mail and not a newspaper, and the plaintiff received the notice.

property and the plaintiff fails to carry its burden and show the statutes are facially unconstitutional or unconstitutional as applied to the plaintiff.

**IT IS ORDERED**:

Judgment will be granted in favor of the defendant, City of Omaha, and against the plaintiff, CMAC, Inc.

Dated this 10th day of September, 2014.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge